IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV401-02-F[1]
(3:04CR107-1-F)

| | |
|---|---|
| WILLIAM F. REYNOLDS,  )<br>  Petitioner,  )<br>  )<br>v.  )<br>  )<br>UNITED STATES OF AMERICA,  )<br>  Respondent.  )<br>_____ ) | O R D E R |

**THIS MATTER** is before this Court upon a document captioned as "Petitioner['s] Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. §2255," filed September 20, 2006; and on the petitioner's "Memorandum Of Good Cause Shown . . . , " filed October 23, 2006. For the reasons stated herein, the petitioner's Motion to Vacate will be <u>dismissed</u> as time-barred.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

According to the record of the petitioner's underlying criminal case, on May 25, 2004, a Superceding Bill of Indictment was filed, charging the petitioner and another individual with bank robbery, in violation of 18 U.S.C. 2113(a) (Count One), with armed bank robbery, in violation of 18 U.S.C. 2113(d) (Count

---

[1]The underlying criminal case originally was assigned to the Honorable H. Brent McKnight, United States District Judge. However, upon the death of Judge McKnight, and a determination that the other two district judges in this District had conflicts which prevented them from presiding over this case, the matter was assigned to the Honorable David A. Faber, United States District Judge for the Southern District of West Virginia. Accordingly, the instant Motion to Vacate also has been assigned to Judge Faber for resolution.

Two), and with using and carrying and, in furtherance of a crime of violence, possessing a firearm, in violation of 18 U.S.C. §924(c)(1) (Count Three).

On August 18, 2004, the petitioner entered into a written Plea Agreement with the government by which he agreed to plead guilty to Counts One and Three as set forth in the Superceding Indictment. The parties' Plea Agreement memorialized the petitioner's understanding that he was facing a statutory maximum term of 20 years imprisonment for his conviction under Count One, and a consecutive statutory minimum mandatory term of five years imprisonment for his conviction under Count Three. By his Agreement, the petitioner also stipulated to a Total Adjusted Offense Level of 19, but acknowledged that if the U.S. Probation Office found some other Offense Level to be applicable, such other Level would be used to calculate his sentence.[2]

Furthermore, by the terms of his Agreement, the petitioner waived his right to challenge the calculation of his sentence under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and its progeny; he consented to the Court's use of the Sentencing Guidelines for the purpose of calculating his sentence; he agreed to pay full restitution, even for harm caused under the dismissed Count; and he waived the vast majority of his rights pertaining to the direct appellate and collateral review of his convictions

---

[2] In fact, the Probation Office did determine that since the petitioner was a Career Offender, his correct Adjusted Offense Level was 29, not 19.

and sentences. That is, the petitioner agreed that he and his counsel had discussed his appellate rights, and whether there were any potential issues which could be raised. Furthermore, in light of those discussions, the petitioner expressly waived his right to challenge his case on any grounds, except for allegations of ineffective assistance of counsel, prosecutorial misconduct, and/or that his sentence was based upon one or more findings on Guidelines issues which were inconsistent with the specific stipulations set forth in his Plea Agreement. The petitioner's Agreement also preserved his right to challenge any unanticipated issues which arose during his Sentencing Hearing, so long as the undersigned found and certified the matters "to be of such an unusual nature as to require review by the Fourth Circuit Court of Appeals."

Next, on September 13, 2004, the petitioner appeared before the Court and tendered his guilty pleas to Counts One and Three. On that occasion, the Court engaged the petitioner in its standard, lengthy colloquy to ensure that his guilty pleas were being intelligently and voluntarily tendered. In response to the Court's numerous questions, the petitioner swore, inter alia, that he had fully discussed his case with his attorney; that he understood the charges and penalties which he was facing; that he had fully discussed any defenses which he might have had to those charges; that he understood his right to plead "not guilty" and

3

proceed to trial on those matters; and that he had discussed how the Sentencing Guidelines might apply to his case.

The petitioner also swore to the Court that he understood the appellate and post-conviction waiver provisions which were in his Plea Agreement; that no one had threatened or intimidated him, or made him any promises of lenience in order to induce his guilty pleas; and that he, in fact, was guilty of the subject charges. Additionally, the petitioner advised the Court that he was satisfied with the services of his attorney. Thereafter, defense counsel warranted to the Court that she had reviewed each of the terms of the Plea Agreement with the petitioner, and was satisfied th at the petitioner understood those terms. Consequently, at the conclusion of that proceeding the Court found that the petitioner's guilty pleas were being intelligently and voluntarily tendered, and so the Court accepted the pleas.

On May 20, 2005, the Court conducted a Factual Basis & Sentencing Hearing in this matter. During that proceeding, the Court determined, in accordance with his Pre-Sentence Report, that the petitioner's total Adjusted Offense Level was 29 and his Criminal History Category was VI. However, pursuant to the Career Offender provisions set forth in §4B1.1(c)(3) of the Sentencing Guidelines, the petitioner's convictions exposed him to a term of 262 to 327 months imprisonment. Nevertheless, the government made an oral motion for a downward departure pursuant

4

to §5K1.1 of the Sentencing Guidelines, and the Court granted that motion. Ultimately, the Court exercised its discretion and sentenced the petitioner to a total term of 144 months imprisonment, that is, 84 months for the robbery conviction and 60 months consecutive for the firearm conviction.

At the conclusion of the petitioner's Hearing, the Court specifically advised him of his right to appeal, and of the requirements necessary to initiate such an appeal. However, the petitioner did <u>not</u> express any desire for an appeal. Indeed, the Court's Judgment was filed on June 17, 2005, but the petitioner did not initiate an appeal prior to the expiration of his 10-day appeal period.

Rather, after waiting nearly four months from the date on which the Court entered its Judgment, on October 14, 2005, the petitioner filed a "Motion For Extension Of Time To File A Notice Of Appeal. In support of that Motion, the petitioner reported that at some unspecified point he had "advised counsel to file a notice of appeal"; and that "on or about July of 2003 [sic] the [petitioner] attempted to contact defense [counsel] and there was no response concerning the appellant [sic] inquiry about the delay of the notice of appeal as requested by [him]."

On October 18, 2005, a document captioned as "Attorney's Response To Pro Se 'Motion For Extension Of Time To File A Notice Of Appeal'" was filed. In that document, the petitioner's former

defense counsel asserted, among other matters, that the petitioner "never requested that the attorney file a Notice of Appeal"; and that counsel had "no knowledge of the [petitioner's] alleged attempt to contact her 'on or about July of 2003' and/or on or about July of 2005." In any event, on January 13, 2006, this Court denied the petitioner's Motion for Extension, noting that such Motion had been filed far outside of the ten and 30-day time periods which are set forth under Rule 4 of the Federal Rules of Appellate Procedure.

Nevertheless, on February 10, 2006, the petitioner filed a Notice of Appeal, seeking to appeal what he described as the Court's denial of his "motion to restore appellate rights." In addition, the attorney who eventually was appointed to represent the petitioner on appeal amended the petitioner's Notice of Appeal to include challenges to his convictions and sentences.

Not surprisingly, however, the Fourth Circuit Court of Appeals issued an unpublished opinion by which it affirmed this Court's denial of the petitioner's Motion for Extension of Time to File a Notice of Appeal. The appellate Court also dismissed the petitioner's appeal of his criminal Judgment. See United States v. Reynolds, unpublished, No. 06-4189, slip op. at 2-3 (4th Cir. May 23, 2006). Thereafter, on July 5, 2006, the appellate Court denied the petitioner's untimely filed Petition for Rehearing and Rehearing En Banc.

Obviously undaunted by his lack of success, on September 20, 2006--that is, more than 14 months after his criminal Judgment was filed, the petitioner returned to this Court on the instant Motion to Vacate. By this Motion, the petitioner argues that his former defense attorney was ineffective for her alleged failures: (1) to challenge a four-point Offense Level increase which he received at sentencing; (2) to seek a dismissal of the charges on the basis of the government's violation of his rights under the Speedy Trial Act; and (3) to file an appeal as he reportedly asked counsel to do.

Upon this Court's initial review of that Motion, it was determined that the Motion might have been time-barred by the applicable one-year filing deadline. Therefore, on October 11, 2006, the Court entered its standard Order pursuant to <u>Hill v. Braxton</u>, 277 F.3d 701 (4th Cir. 2002), explaining the 1-year limitations period provided by the Antiterrorism and Effective Death Penalty Act of 1996 (hereafter, the "AEDPA"), and directing the petitioner to file a document in which he explained why his Motion to Vacate should be construed as timely filed.

To that end, on October 23, 2006, the petitioner filed a document captioned as "Memorandum Of Good Cause Shown To Vacate, Set Aside Or Correct Sentence, Pursuant To 28 U.S.C. §2255 And Rule 7(b) Of The Federal Rules Of The Civil Procedure." By his Memorandum, the petitioner essentially asserts that his Motion to

Vacate should not be considered time-barred because his one-year limitations period did not begin to run until 90 days after the Fourth Circuit entered its Order dismissing his appeal. Notwithstanding his obvious belief to the contrary, however, the undersigned finds that the petitioner's Motion to Vacate is, in fact, time-barred. Therefore, the instant Motion must be dismissed.

## II. **ANALYSIS**

As the petitioner was advised in the Court's <u>Hill</u> Order, in 1996 Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). Among other things, the AEDPA amended 28 U.S.C. §2255 by imposing a 1-year statute of limitations period for the filing of a motion to vacate. Such amendment provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or

8

claims presented could have been discovered through the exercise of due diligence.

As was previously noted, the petitioner was convicted and sentenced on May 20, 2005. The Court entered its Judgment for such convictions on June 17, 2005, and the petitioner did <u>not</u> timely note an appeal to those matters. Therefore, by this Court's calculations, the petitioner's convictions and sentences became final on or about July 7, 2005--that is, at the expiration of the ten-day period during which the petitioner could have appealed. Critically, therefore, the petitioner had up to and including July 7, 2006 in which to file this Motion to Vacate.

Obviously, however, the instant Motion was not filed by that date. Rather, the petitioner's Motion was filed more than two months later on September 20, 2006. Moreover, the petitioner has failed to demonstrate that his Motion to Vacate still should be construed as timely filed.

Indeed, although the petitioner has asserted that his one-year period should be calculated as having commenced running 90 days after his belated appeal was dismissed, such proposed calculation is wholly inconsistent with the primary purpose of the AEDPA. To be sure, if Courts were to reward petitioners for filing out-of-time appeals by allowing such untimely appeals to restart the one-year limitations clocks, cases where petitioners failed to timely note their appeals would remain unresolved, or otherwise subject to direct attack at the sole discretion of the

petitioner.  See generally Artuz v. Bennett, 531 U.S. 4, 8 (2000) (noting that untimely filed appeal could not toll the running of the one-year limitations period in habeas proceeding under §2254); and Panhorst v. United States, 241 F.3d 367 (4th Cir. 2001) (explaining that "[f]iling deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced."). To put it another way, it would fly in the face of the AEDPA's express purpose of promoting finality to allow petitioners to somehow breathe new life into their expiring or expired limitations periods by calculating those periods as running from the date on which every appeal is concluded even, like here, when such appeal was dismissed as untimely filed.

Moreover, to the extent that the petitioner believes that his allegation that his attorney failed to honor his request for an appeal somehow should extend his one-year limitations period, the Court finds that he is mistaken on that point as well. Rather, because the petitioner's "Motion For Extension Of Time To File A Notice Of Appeal" makes it clear that the petitioner was or should have been aware of counsel's alleged failure to pursue an appeal as early as July 2005, there simply is no reason why the petitioner could not have filed his Motion to Vacate on or

before July 7, 2006.

### III. CONCLUSION

The AEDPA requires, among other things, that petitioners seeking to bring Motions to Vacate under 28 U.S.C. §2255 take action within one year of the date on which the relevant convictions and/or sentences become final. In the present case, careful review of the record demonstrates that the petitioner has failed to meet the AEDPA's time requirement, and he also has failed to establish a basis for construing his Motion as timely filed in any event. Accordingly, the petitioner's Motion to Vacate must be <u>dismissed.</u>

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the instant Motion to Vacate is **DISMISSED** as untimely filed; and

2. That the Clerk shall send copies of this Order to the petitioner and to counsel for the United States.

**SO ORDERED** this 23rd day of January, 2007.

ENTER:

David A. Faber
U.S. District Judge